UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTOINE D. BARTON, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| vs. | )   Case No. 4:19 CV 240 JMB |
| | ) |
| RICHARD JENNINGS, | ) |
| | ) |
|     Respondent. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court of the petition of Antoine D. Barton for writ of habeas corpus under 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

### **I.    Procedural Background**

Petitioner Antoine D. Barton is presently incarcerated at the Potosi Correctional Center, pursuant to the judgment and sentence of the Circuit Court of the City of Saint Louis. On October 9, 2014, a jury convicted petitioner of one count of first-degree murder, § 565.020, Mo. Rev. Stat., and one count of armed criminal action, § 571.015, Mo. Rev. Stat. Verdicts [Doc. # 14-3 at 45-46].[1] On December 5, 2014, the trial court sentenced petitioner to a term of life imprisonment without parole and a concurrent term of 30 years. Judgment [Doc. # 14-3 at 54-56]. The Missouri Court of Appeals affirmed petitioner's convictions and sentence on direct appeal on February 9, 2016. State v. Barton, No. ED102327 (Feb. 9, 2016) (Direct Appeal Opinion) [Doc.

---

[1] This was petitioner's second trial, following a mistrial in October 2013 when the jury could not reach a decision. Trial Minutes filed Oct. 11, 2013 [Doc. # 14–3 at 9]. Citations in brackets refer to the CM/ECF document number and the page number that appears in the red header.

#14-7]. Petitioner's motion for postconviction relief pursuant to Missouri Supreme Court Rule 29.15 was denied on March 1, 2017, following an evidentiary hearing. Findings of Fact, Conclusions of Law and Order (FFCL) [Doc. # 14-8 at 54-68]. On April 17, 2018, the Missouri Court of Appeals affirmed the denial of postconviction relief. Barton v. State, No. ED105526 (Apr. 17, 2018) (PCR Opinion) [Doc. # 14-12]. On February 15, 2019, petitioner timely filed his § 2254 petition, in which he asserts five claims of ineffective assistance of trial counsel.

## II.   Factual Background

On July 6, 2011, between 10:45 and 11:00 p.m., twenty-two-year-old Calvin Ross was fatally shot in an alley in the Walnut Park neighborhood of St. Louis. Three men — petitioner, DeJuan Blocker, and Michael Ford — were charged in connection with Mr. Ross's death.

Petitioner and Mr. Ross both grew up in the Walnut Park neighborhood and were frequently among the people who hung out at "Big Momma's" house.[2] In the year before the shooting, DeJuan Blocker started coming to the house to see petitioner. On July 6, 2011, Blocker was seen at Big Momma's talking with Mr. Ross throughout the day.

Michael Ford was arrested on charges unrelated to the murder and stated that that he had information regarding the case.[3] He provided a cell phone number that police traced to a phone that petitioner used. On July 6, 2011, a number of calls were placed to that cell phone from the

---

[2] "Big Momma's" house was open to anyone to come and use the phone or the bathroom. Trial Tr. at 285-87 [Doc. # 14–1].

[3] According to evidence presented at Ford's trial, Ford told the police that on July 6, 2011, he drove around with petitioner, who wanted to kill Mr. Ross because Ross had shot at him. Ford gave petitioner a revolver. Petitioner had asked Blocker to keep Ross in the neighborhood. While in the car with petitioner, Ford overheard multiple phone conversations between Blocker and petitioner, in which Blocker stated he wanted to kill Ross in order to prove himself. Ford and petitioner arrived back in the neighborhood and petitioner and Blocker went into an alley with Ross. When petitioner returned to the car, he told Ford that he had killed Ross. Missouri v. Ford, 454 S.W.3d 407, 409-10 (Mo. Ct. App. 2015).

land line at Big Momma's house.  As relevant here, at 10:30 p.m., a call was placed from Big Momma's to the cell phone, which was located near Lambert Airport.  Trial Tr. at 317, 374.  At 10:47, a call was placed to the land line from the cell phone, which was near the murder scene.  Id. at 316, 375.  At 12:15 a.m., the cell phone was in downtown St. Louis.  Id. at 347.

In May 2014, Blocker pleaded guilty to second-degree murder, stating that he had agreed to shoot Mr. Ross at petitioner's request in order to gain entry to a local gang.[4]  According to Blocker's guilty plea statement — a portion of which was read to the jury at petitioner's trial — Blocker and petitioner walked with Mr. Ross into an alley and petitioner indicated to Blocker that he should shoot Ross.  When Blocker failed to do so, petitioner shot Ross himself.  The jury also heard a portion of Mr. Blocker's recorded interview with the police, in which he stated that he was supposed to shoot Mr. Ross in order to gain admission to the gang.  He got scared and started to walk away and petitioner shot Ross.  Trial Tr. at 435; State's Direct Appeal Brief at 24-25 (citing recording of Blocker's statement to police).  At petitioner's trial in October 2104, however, Blocker testified that petitioner was not present and that he was alone when he shot Mr. Ross.[5]

Additional facts will be included as necessary to address the issues.

### III.    Legal Standards

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

---

[4] At Blocker's guilty plea hearing, the prosecutor read a statement of the evidence that would have been presented at a trial.  Mr. Blocker agreed that the statement was true.

[5] In late August 2014, Blocker signed an affidavit in which he stated that he shot Mr. Ross and denied that petitioner was involved in the murder.  Missouri v. Barton, No. ED102327 (Mo. Ct. App. Feb. 9, 2016) at 4.  In response, the State requested recordings of Blocker's phone calls from prison, two of which suggested that Blocker signed the affidavit to help petitioner at trial.  Id.

3

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 544 U.S. at 141; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless

4

the petitioner rebuts the presumption with clear and convincing evidence. Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1).  Erroneous findings of fact by the state courts do not ensure the grant of habeas relief.  Rather, the determination of these facts must be unreasonable in light of the evidence of record. Id.

To prevail on his ineffective assistance of counsel claims, petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 688 (1984).  With respect to the first Strickland prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689.  Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013) (quotation marks and citation omitted).  Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689; see also Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions.")  (citation omitted)).

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted).  Although Strickland

requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective — [courts] need not first make a determination regarding deficiency." Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment.  So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [Harrington v. Richter, 562 U.S. 86, 112, 101], 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at [102].

Williams, 695 F.3d at 831-32.  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.  Furthermore, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct.  Odem v. Hopkins, 382 F.3d 846, 849 (8th Cir. 2004).

**IV.    Discussion**

Petitioner asserts five claims of ineffective assistance of trial counsel.  In particular, he contends that trial counsel failed to: (1) investigate and call two alibi witnesses; (2) move for a mistrial or seek removal of two jurors who fell asleep during trial; (3) move to reopen voir dire or remove from the jury panel a veniremember who slept through a portion of voir dire and was

seated on the jury; (4) object to the testimony of two law enforcement officers regarding his cell phone number; and (5) object to cell–site location evidence. Respondent asserts that petitioner procedurally defaulted claims 3 and 5 because he did not raise them in his post-conviction proceedings. Petitioner contends that his procedural default of these claims should be excused under the Supreme Court's decision in Martinez v. Ryan because he received ineffective assistance of post-conviction motion counsel. 566 U.S. 1, 17 (2012) ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").

## Ground 1: Failure to Call Alibi Witnesses

Petitioner told trial counsel that his former girlfriend Sharron Jackson and his cousin Britney Rayford could provide an alibi for him. He testified at the postconviction evidentiary hearing that he was at his grandmother's house for a family gathering until 10:00 on the evening of July 6, 2011. He and Ms. Jackson then drove to Ms. Rayford's apartment, where they remained until the next morning.[6] PCR Tr. at 15-17 [Doc. # 14-9 at 15-17].

Trial counsel gave her investigator phone numbers for Ms. Jackson and Ms. Rayford. Id. at 30-31. Investigator Myrna Prenger testified that she did not have an address for Ms. Jackson but was able to reach her by telephone. Ms. Jackson would not talk on the phone and wanted an appointment to meet in person. Id. at 53-54. Ms. Prenger testified that she was never able to make

---

[6] Petitioner provided two other versions of his activities on the night of July 6th, 2011. When he was arrested, he told the police that he was with Blocker and that Blocker shot Ross. PCR Tr. at 17-18. He told his trial counsel that he was at his grandmother's home at the time of the murder. Id. at 46-47. The family members with whom defense counsel spoke could not establish petitioner's whereabouts after 8:00 that evening. Id. at 47.

7

an appointment to meet with Ms. Jackson.  Later, Ms. Jackson told Ms. Prenger she would talk to her by phone at a specific date and time.  When Ms. Prenger called her at the designated time, Ms. Jackson did not answer the phone and never responded to Ms. Prenger's messages.  Id. at 53-54.  With respect to Ms. Rayford, the phone number petitioner provided was not a working number.  His family was supposed to provide a new number and address, but never did so.  Id. at 54-55.

Sharron Jackson testified at the postconviction hearing that she and petitioner were together at his grandmother's and Ms. Rayford's homes on July 6, 2011.  Id. at 57-60.  She denied that she was ever contacted by the investigator or trial counsel.  Id. at 60-62.  Brittney Rayford testified that petitioner and Ms. Jackson were at her apartment from approximately 10:00 p.m. on July 6th until the following morning.  Id. at 65-68.  She also testified that, before petitioner's trial, she moved several times and changed her phone number.  No one in her family told her about petitioner's trial or asked her to get in touch with his lawyer.  Id. at 71-73.  Both women stated that they would have offered the same testimony at trial if subpoenaed to appear.  Id. at 60, 70.

The postconviction court denied petitioner's claim that trial counsel was ineffective for failing to call alibi witnesses.  The court noted that petitioner's claim required him to show that the witnesses could have been located through reasonable investigation, would have testified if called, and that their testimony would have provided a viable defense.  FFCL at 12-13.  The court found that petitioner failed to establish that Ms. Jackson and Ms. Rayford were available and would have been willing to testify at his trial.  He also failed to establish that Ms. Rayford could have been located.  Id.  On appeal, the Missouri Court of Appeals held that the postconviction court was free to disbelieve the witnesses' testimony that they would have testified at trial and that the appellate court was required to defer to that credibility determination.  PCR Opinion at 4-5.  And, because the postconviction court did not believe the witnesses when they said they were willing to

8

testify at trial, petitioner could not meet his burden to show that trial counsel was ineffective for failing to call them.  Id.

Petitioner cannot satisfy the "doubly deferential" standard required to obtain habeas relief on his claim arising from counsel's failure to call Ms. Jackson and Ms. Rayford to testify.  First, the Missouri Court of Appeals correctly identified the Strickland legal standard governing his claim.  Second, the decision to defer to the postconviction court's credibility determinations was not an unreasonable application of Strickland.  Finally, this Court is required to defer to the state courts' credibility determinations, Smulls v. Roper, 535 F.3d 853, 864 (8th Cir. 2008), including "[a] state court's findings of fact made in the course of deciding" an ineffective-assistance-of-counsel claim, Odem v. Hopkins, 382 F.3d 846, 849 (8th Cir. 2004).

Petitioner's claim in Ground One will be denied.

### Ground 2: Failure to Move for Mistrial or Remove Sleeping Jurors

During trial, petitioner notified defense counsel's legal assistant that two jurors were falling asleep.[7]  The assistant testified that she observed the jurors sleeping but could not recall the portion of the trial in which they were asleep, while petitioner could only say that one of the jurors slept during DeJuan Blocker's testimony.  PCR Tr. at 23-24, 11.  The assistant testified that she informed trial counsel about the sleeping jurors.  Id. at 24-25.  Trial counsel could not recall whether she was informed about sleeping jurors.  Id. at 28.  She explained that, when she noticed jurors sleeping, it was her usual practice to approach the prosecutor for corroboration and then to inform the judge.  Id. at 49-50.

In denying this claim, the postconviction court stated that "[a] lapse of attention is not a ground for the removal of a juror, and the mere fact a juror or jurors slept during a trial does not

---

[7] Notes recording petitioner's exchange with the assistant were introduced at the postconviction hearing. PCR Tr. at 21-25.

9

entitle a movant to postconviction relief." FFCL at 11 (citations omitted). In order to prevail of his claim, petitioner was required to "allege and prove the specific evidence that was missed." Id. The postconviction court concluded that the outcome would not have been different if the sleeping juror heard all or most of DeJuan Blocker's testimony. While Blocker testified that petitioner was not involved in the shooting, he acknowledged that he had previously identified petitioner as a participant in the shooting. Furthermore, Blocker's testimony was inconsistent with other evidence in the trial. Finally, Blocker was called as a witness for the State and not for the defense. Under these circumstances, the postconviction court concluded, it was "highly speculative" that petitioner was prejudiced by a juror missing a portion of Blocker's testimony. FFCL at 11.

The Missouri Court of Appeals affirmed, stating that petitioner was required to show that he was prejudiced by counsel's failure to bring a sleeping juror to the Court's attention. PCR Opinion at 4. In order to prove he was prejudiced, petitioner "had to show what specific evidence the sleeping juror missed." Id. Here, petitioner "wholly failed to prove prejudice because, even if the jurors had actually fallen asleep, . . . [n]o one could remember what portion of the trial one of the jurors was sleeping, and [petitioner] testified only generally that the other juror was sleeping 'during DeJuan Blocker's testimony.'" Petitioner did not provide evidence "as to how long this juror was asleep or which portions of Blocker's 30+ pages of testimony the juror did not hear."

Even if the Court assumes that petitioner's counsel provided constitutionally inadequate performance, petitioner cannot meet his substantial burden to show he was prejudiced by counsel's performance. Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (Strickland prejudice standard requires that "the likelihood of a different result must be substantial, not just conceivable.") (citation omitted). As the postconviction and appellate courts held, petitioner cannot meet that burden in the absence of specific evidence of what the jurors missed. To the extent that petitioner

10

contends that trial counsel should have sought a mistrial, he cannot show that the trial court would have granted such a motion. Jones v. State, 389 S.W.3d 253, 259 (Mo. Ct. App. 2012) ("Mistrial is a drastic remedy only to be exercised in extraordinary circumstances where there is no other way to remove the prejudice to the defendant.") (citation omitted).

Petitioner has not satisfied the "doubly deferential" standard and his claim in Ground 2 will be denied.

### Ground 3: Failure to Strike Sleeping Juror from Venire Panel

Petitioner asserts that he told trial counsel during jury selection that a member of the venire was sleeping during voir dire. Counsel did not act on this information and the sleeping venire member was seated on the jury where she again fell asleep. Petitioner did not raise this claim in his postconviction motion and thus it is procedurally defaulted.

"Ineffective assistance of state postconviction counsel does not usually provide cause for a procedural default, except for one 'narrow exception.'" Deck v. Jennings, 978 F.3d 578, 582 (8th Cir. 2020) (citing Coleman v. Thompson, 501 U.S. 772, 755 (1991) and Martinez v. Ryan, 566 U.S. 1, 9 (2012)). In Martinez, the Supreme Court held that ineffective assistance of postconviction counsel can provide "cause" to excuse a defaulted ineffective-assistance-of-trial-counsel claim where (1) the claim of ineffective assistance of trial counsel was a "substantial" claim, and (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding.[8] Harris v. Wallace, 984 F.3d 641, 648 (8th Cir. 2021) (citations omitted).

---

[8] The Martinez exception has a third element: that the state collateral review proceeding was the "initial" review with respect to ineffective-assistance claims. This element is satisfied because Missouri does not allow ineffective-assistance claims to be raised on direct appeal and requires that they be raised in postconviction proceedings. Id.

11

Respondent argues that petitioner cannot establish that his ineffective-assistance claim is substantial because trial counsel could reasonably determine that the complained-of venire members were favorable to the defense. "[T]he decision to strike a venireperson is generally a matter of trial strategy." Horitz v. Missouri, No. 4:05CV01763ERW, 2009 WL 322237, at *8 (E.D. Mo. Feb. 9, 2009) (quoting Boyd v. State, 86 S.W.3d 153, 158 (Mo. Ct. App. 2002)). On habeas review, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy." Guzman-Ortiz v. United States, 849 F.3d 708, 713 (8th Cir. 2017) (internal quotation and citation omitted). Petitioner has not overcome that burden here.

Even if the Court assumes that petitioner's trial-counsel claim is "substantial," he cannot show that postconviction counsel was ineffective in failing to assert the claim. "If, as with appellate counsel, 'one of [post-conviction] counsel's important duties is to focus on those arguments that are most likely to succeed, [then] counsel will not be held to be ineffective for failure to raise every conceivable issue.'" Sutton v. Wallace, No. 4:13-CV-1285 (CEJ), 2016 WL 4720452, at *10 (E.D. Mo. Sept. 9, 2016) (citing Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006) (alterations in original)). "When [ ] counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain an ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." Id. "[D]eclining to raise a claim . . . is not deficient performance unless that claim was plainly stronger than those actually presented." Deck, 978 F.3d at 584 (quoting Davila v. Davis, ––– U.S. –––, 137 S. Ct. 2058, 2067 (2017)). Here, postconviction counsel raised a number of other claims, including that trial counsel

12

should have taken action when the jurors slept during trial. Petitioner does not argue that his defaulted claim is stronger than those presented.

Petitioner's claim in Ground 3 is procedurally defaulted and will be denied.

### Ground 4: Failure to Object to Testimony Regarding Petitioner's Cell Phone

As noted above, Michael Ford provided a cell phone number that detectives traced to petitioner. Petitioner contends that trial counsel should have objected to testimony regarding the cell phone number as a violation of his right to confront witnesses against him, as established in Crawford v. Washington, 541 U.S. 36, 54 (2004) (barring admission of out-of-court statements that are testimonial in nature who did not appear at trial unless the witness was unavailable to testify and defendant had a prior opportunity for cross-examination).

At trial, Sergeant Joseph Lankford testified that Michael Ford stated he had information regarding Ross's murder. Trial Tr. at 308-09. The following exchange occurred:

> Q: Based upon [Ford's] information, did you investigate any new leads?
>
> A: Yes.
>
> Q: What leads were that [sic]?
>
> A: We were provided with a cellular phone number.
>
> [Defense counsel]: Objection. It's still hearsay.
>
> [Prosecutor]: It goes to the subsequent conduct, your Honor.
>
> The Court: Overruled. I'll allow it.

Id. at 309. Sgt. Lankford then testified that he requested a grand jury subpoena for subscriber information and call detail records for the cell phone number. Id. He learned that the subscriber of the phone number was petitioner's godmother. Id. at 310. Sgt. Lankford testified that he used the records to determine what calls had been placed and received by the cell phone and the cell

13

phone's location at various times. Id. at 312-17. He also testified that there were a number of calls between the cell phone and the land line at Big Momma's. Id. at 314-18. On cross-examination, he acknowledged that nothing in the cell phone records established who was using the phone. Id. at 323.  On redirect and recross, he testified that, based on his investigation, he determined that petitioner and Blocker placed the calls between the cell phone and land line that night, but that he did not have personal knowledge that it was petitioner using the cell phone that night. Id. at 323-25. Detective Charles Betts testified over defense counsel's objection that, after speaking with petitioner's godmother, he believed the cell phone belonged to petitioner. (Tr. 430-32).

    The State also called two expert witnesses to testify regarding the movements of the cell phone on July 6, 2011. Emily Blackburn, a crime analyst supervisor for the police department, prepared a map showing connections made by the cell phone with specific cell phone towers. Trial Tr. at 341-44. Jacob Zipprich, an engineer with Sprint, prepared a map estimating the cell phone's location within one-tenth of a mile, based on the speed with which the cell phone signal moved between the tower and cell phone. Id. at  369-72. Before trial, defense counsel filed a motion to suppress any testimony regarding cellular phone location technology under United States v. Frye, 293 F.3d 1013 (D.C. Cir. 1923). Legal File at 21-24. During trial, counsel called an expert witness who identified a number of factors that cast doubt on the accuracy of location technology. Id. at 452-55.

    At the postconviction evidentiary hearing, trial counsel was asked why she did not make an objection based on Crawford to testimony regarding the cell phone number. She responded that she objected on hearsay grounds and, further, that she did not believe that Crawford applied. PCR Tr. at 40. In addition, she testified that who the cell phone belonged to was not a critical issue, and further, that petitioner's statements to the police established that the phone belonged to him.

14

Rather, the critical issue was where the cell phone was on July 6, 2011, and she retained an expert to challenge the methodology used to determine the phone's location. Id. at 37-38, 42-44.

The postconviction court rejected petitioner's ineffective assistance claim based on the Confrontation Clause, stating in relevant part that defense counsel provided a valid strategic reason for not making an objection based on Crawford. In addition, it was highly speculative that petitioner was prejudiced because Detective Lankford acknowledged that he did not have personal knowledge to support his belief that petitioner used the cell phone. FFCL at 14. The Missouri Court of Appeals affirmed, finding that petitioner had not established that counsel's performance was unreasonable. PCR Appeal at 5-6. Trial counsel testified that she did not challenge the evidence linking petitioner to the cell phone because she did not believe that there was any dispute that the phone belonged to him. PCR Appeal at 5. Rather, counsel's strategy was to challenge the reliability of the State's evidence regarding the location of the phone. Petitioner did not show that this strategy was unreasonable, but argued instead that the location of the phone would have been irrelevant if trial counsel had successfully challenged his ownership of the phone. "[E]ven if that approach also would have been a reasonable trial strategy," the Court of Appeals stated, "it is not ineffective assistance for counsel to pursue one reasonable trial strategy to the exclusion of another." Id.

Petitioner has not shown that the decision of the Missouri Court of Appeals was contrary to, or an unreasonable application of, Strickland or that the court unreasonably applied Strickland to the facts in this case. Petitioner's claim for relief in Ground 4 will be denied.

### Ground 5: Failure to Object to Admission of Cell Site Location Information

Petitioner argues that counsel should have objected to the introduction of cell-site location information. He concedes that this claim was not raised in post-conviction proceedings, but argues

15

that his procedural default is excused under Martinez because he received ineffective assistance of postconviction counsel.

Petitioner relies on the Supreme Court's decision Carpenter v. United States, 138 S. Ct. 2206, 2221 (2018), in which the Supreme Court held that the government must obtain a warrant supported by probable cause to obtain cell-site location information. Carpenter v. United States, 138 S. Ct. 2206, 2221 (2018). He notes that the State did not obtain a warrant before acquiring the cell-site records it relied on in this case.

Despite the Supreme Court holding in Carpenter, petitioner cannot establish that he received ineffective assistance of counsel at either the trial or postconviction stage. Carpenter was decided in 2018, while the trial occurred in 2014 and the postconviction motion was decided in March 2017. "Counsel is not accountable for unknown future changes in the law." Toledo v. United States, 581 F.3d 678, 681 (8th Cir. 2009). Counsel's representation cannot be said to have fallen below an objective standard of reasonableness because a failure to predict a change in the law does not amount to ineffective assistance. Johnson v. Armontrout, 923 F.2d 107, 108 (8th Cir. 1991); see also Cutts v. Miller, No. 19-CV-10721 (LJL), 2021 WL 242891, at *7 (S.D.N.Y. Jan. 25, 2021) (rejecting ineffective-assistance claim based on Carpenter and noting that, prior to the decision, "the weight of authority was against requiring a warrant supported by probable cause to obtain" cell-site location data).

Petitioner is not entitled to relief on the claim asserted in Ground 5.

\* \* \* \* \*

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the petition of Antoine BArton for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. # 1] is **denied**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued, because petitioner has not made a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a certificate of appealability).

A separate Judgment will accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of April, 2021.